Close *v.* Close.

---

Close, appellant, and Close, respondent.

1. Where the husband has been guilty, or there is reasonable ground to apprehend that he will be guilty, of any actual violence which will endanger the safety or health of the wife, or where he has inflicted upon her any physical injury accompanied by such persistent exhibition of ill-feeling and opprobrious epithets as will endanger her health, or render her life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife, the decree of separation should be pronounced.

2. No rigid rule can be presented to define the extent of the injury, actual or apprehended, which will justify judicial interference.

3. *Quere:* Whether relief will be granted in a case of extreme hardship, in the absence of any actual or apprehended physical injury ?

The opinion of the Chancellor is reported in 9 *C. E. Green* 338.

*Mr. C. Parker*, for appellant.

*Mr. Winfield* and *Mr. Williamson*, for respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

This is an appeal from the decree of the Chancellor refusing to grant Ellen M. Close, the complainant, a divorce from bed and board for alleged cruelty on the part of her husband.

It is very difficult to give any affirmative definition which will express, with entire accuracy, the meaning of extreme cruelty in our statute concerning divorce. The courts, both in England and in this country, have refrained from laying down any inflexible rule which should serve as a standard by which to adjudge all cases.

The weight of authority is, that the injury actually inflicted or reasonably apprehended, must be bodily harm in distinction from mere mental suffering. 1 *Hagg. C. R.* 35 ; 2 *Phill.* 111 ; 28 *Eng. L. & Eq.* 603; *Law Rep.* 1 *Prob. & Div.* 295 ; *Saxt. Ch.* 474 ; 1 *Gr. Ch.* 459 ; 3 *Stockt.* 195 ; 5 *C. E. Green* 97.

The injury may be either to the safety of the person, or to the health of the aggrieved party, and it is not necessary that it be actually inflicted; it is sufficient if it be reasonably apprehended. Nor can any rigid rule be prescribed to define the extent of the violence, actual or apprehended, which will justify judicial interference.

Each case as it arises must be determined by the sound discretion of the court, according to the circumstances which attend it. Slight abuse of the person, accompanied by opprobrious language, which would imperil the health of a refined and delicate wife, might be endured with comparative unconcern by one of a less sensitive nature.

In *Cook* v. *Cook*, 3 *Stockt.* 195, there was a single act of per-

sonal violence, not of an aggravated character, but the wife was in feeble health, and the husband called her a dirty whore, and told her she ought to have her head broken, and she would get it unless she cleared out.   The Chancellor held that he would not be governed by the degree of personal violence actually used, and that this evidence showed such a reasonable apprehension of bodily hurt as would entitle the complainant to relief.

In *Graecen* v. *Graecen*, 1 *Green's Ch.* 459, the divorce was granted without any proof of actual violence ; and in the later case of *Thomas* v. *Thomas*, 5, *C. E. Green* 97, the actual violence was such as, if repeated, would not have endangered life or limb, but the separation was decreed because the conduct of the husband was aggravated by the application of vile epithets to the wife.

In *Kelly* v. *Kelly, Law Rep.* 2 *Probate and Divorce Causes* 31, the Judge Ordinary declared that, " if force, whether physical or moral, is systematically exerted by the husband, with the view of bending the wife to his authority, in such a manner, to such a degree, and during such a length of time, as to break down her health, and render serious malady imminent, the interference of the law cannot be justly withheld by any court which affects to have charge of the wife's personal safety."   On appeal to the full court, (*Id.* 59,) this declaration was approved, the court saying that the evidence of actual injury was so slight, that they treated the case as one in which there was an absence of any proof of such physical violence as would justify a decree.

Without intending to adopt the view taken in the case last cited as the law of this court, it may be remarked that, if it is examined in the light of principle, it would be difficult to show its unsoundness.   If the body is the only thing to be regarded in these cases, and the purpose and object of the court is to avert from the wife injury to her life, members, or health, there is no reason why the husband should be permitted to inflict an injury in one way which he would be restrained from doing in another.

Without attempting to give a definition of legal cruelty applicable to all cases, I think it may be safely said that, where the husband has been guilty, or there is reasonable ground to apprehend that he will be guilty of any actual violence which will endanger the safety or health of the wife, or where he has inflicted upon her any physical injury accompanied by such persistent exhibition of ill-feeling and opprobrious epithets as will endanger her health, or render her life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife, the decree of sepation should be pronounced. Whether, in a case of extreme hardship, in the absence of any actual or apprehended physical injury, she will be remitted for the redress of her grievances to the domestic forum, must be left for adjudication when the case presents itself.

The case made in the complainant's bill, if supported by the proofs, will entitle her to a divorce under the most rigid rule laid down in any of the cases above referred to.

The complainant testifies that, on the 6th of June, 1870, two days before the birth of her youngest child, a time when she most needed the sympathy and support of her husband, the defendant came into her room and applied the most revolting epithets to her ; that the first time she came down stairs after her confinement, he called her a liar, raised his cane, and threatened to smash her, and then seized her by the arm and swung her across the room ; that, on the 10th of the following August, he grabbed her in his arms and endeavored to force her up stairs, at the same time using the most violent language to her.

That, on the 3d of September, with threats and curses, he ordered her to leave his house, saying he would kick her out, if she did not go ; that, on the 25th of September, he followed her up stairs, and there struck her a number of violent blows, and then followed her down stairs, opened the door, and kicked her off the stoop. She mentions other occasions on which he used like personal violence towards her, and says that repeatedly, during all this period, and frequently in the

presence of her children, he called her a whore, a sow, and a bitch, accompanying these vile epithets with an oath, and with threats of personal injury.

While it may be true that, smarting under the injury she has suffered, she has exaggerated the story of her wrongs, the other testimony in the cause shows that her statement is, by no means, wholly fabricated.

The defendant, himself, admits that he applied to her the vile terms she charges him with using, and he says that he used them whenever he thought they applied to her case.

Ella Close, one of the daughters of the defendant, testifies that, on one occasion, she had seen the defendant strike her mother with a cane; at another time, she saw him throw dishes at her, and on other occasions he had kicked her, using, at all these times, the most violent and abusive language to her.

Gertrude Close, another daughter, substantially corroborates her mother's account of the defendant's conduct on the 25th of September, and says that, before that, she had known her father to use violence to her mother; that she had seen him throw dishes at her across the table, and that she had very often heard him use abusive and profane language to her, almost every time he spoke to her, and often at the table, in presence of the younger children. The wife is likewise supported in her account of the occurrence of September 25th, by Mr. and Mrs. Maxwell.

Frederick N. Close, the son, who was called by the defendant as a witness, testifies that, on the occasion last mentioned, he saw the defendant push the complainant down off the step, and, as she attempted to come on again, he pushed her off a second time, when she fell on the swing.

James Close, who was present at this transaction, is the only witness who says that the defendant did not push complainant down on that occasion; and he is certainly mistaken, if not willfully false, for the defendant himself admits that he did take hold of complainant, and push her out of the house. The defendant further admits that, on the occasion alluded

to by his wife, he seized hold of her, and while attempting to force her up stairs, against her will, she fell from his arms on the stairs. In his testimony, he denies that he used abusive language to his wife on the 6th of June, but he is entirely silent as to the personal violence which she alleges he used the first time she came down stairs after her confinement. The statements of the wife with regard to the husband's violence on a number of occasions, are so fully corroborated by other testimony in the cause, that I am persuaded that her evidence is substantially true; and, if true, there can be no question that the defendant is guilty of extreme cruelty to her. The defendant's conduct, by his own admissions, has been of such a violent, if not brutal character, that a court to which the wife may appeal for protection, should, if there was no other evidence in the case, hesitate long before returning her to his control and authority as a husband.

I have not alluded to the violence of the defendant on the 11th of October, because he had reason to feel provoked by the very heavy purchases made by his wife on his account, by the advice of injudicious friends.

It was insisted with much earnestness on the argument of this cause, that the misconduct of the husband had been provoked by the wife; that she could insure her own safety by lawful obedience, and that if she would reform and return to her husband, the way of reconciliation was open to her.

A careful consideration of the testimony will furnish nothing to justify this assurance. These parties were married in January, 1846, and lived together without any serious discord for nearly twenty years, during which period, the complainant became the mother of nine children.

In 1865, without the slightest justification, the defendant became jealous of one Lehr, who had been a music teacher in the family for several years, and charged her with impropriety for the trifling circumstance that she helped Lehr at dinner to the tender loin of a beefsteak. The complainant herself, dismissed Lehr at once, evidently to prevent the recurrence of such a scene and to remove all cause of offence.

The defendant, in his answer, has charged his wife with infidelity to him, although he has been unable to state a single circumstance upon which even a suspicion against her purity can be founded. After 1865, the complainant's outbursts of ill-temper and violence gradually became more frequent, which can be accounted for only on the belief that he had become too freely addicted to the use of intoxicating drinks. The conduct of the wife, as detailed by the husband himself, furnished no adequate provocation for the cruelty with which he so persistently treated her; and if we believe the wife, supported as she is in a number of instances by the two daughters, she behaved with great forbearance and moderation.

The defendant has inflicted upon the complainant such repeated injury, and shown toward her such an abiding rancor and hatred, without, up to this time, giving any assurance that his conduct will be reformed, that I am satisfied the cohabitation cannot be resumed without peril to the safety of Mrs. Close, and think that the interposition of this court is justified and necessary, and that a divorce from bed and board for life, should be decreed. Under the circumstances of the case, the complainant will be entitled to a proper allowance out of the husband's estate for her maintenance and support.

In my opinion, the decree of the Chancellor should be reversed, with costs, in this court and the court below, and a reasonable counsel fee to counsel of complainant, to be settled by the Chancellor, and the case remitted to the court below, that it may be proceeded in according to the views herein expressed.

Decree unanimously reversed.